

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 19, 2009

Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

   Re: **United States v. Jose Andino**
      **08 Cr. 681 (NRB)**

Dear Judge Buchwald:

  The Government respectfully submits this memorandum in advance of the sentencing of defendant Jose Andino. For the reasons that follow, the Government submits that the Guidelines range that applies in this case is a range of 70 to 87 months, and further submits that a sentence within that range would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.

### Background

  In the summer of 2008, defendant Jose Andino agreed with at least two other individuals, Keithroy Davis and a man known as "Blackheart," to receive a quantity of cocaine in the mail for distribution. (PSR ¶ 2; Tr. 104-325).[1] An individual in the Carribean then sent a package containing approximately 800 grams of cocaine to Andino at his home address in the Bronx. (Tr. 53-57). Before the package arrived in the Bronx, however, during a routine customs inspection in Puerto Rico officers of the Customs and Border Patrol discovered the cocaine concealed among several T-shirts in the package and forwarded the package to Immigration and Customs Enforcement ("ICE") Agents in New York so that those agents could conduct a controlled delivery. (Tr. 55-58).

  The New York ICE agents removed the cocaine, replaced it with sham cocaine, and conducted a controlled delivery of the package to Andino. (Tr. 162-77). After Andino accepted the

---

  [1] "PSR" refers to the October 13, 2009 Presentence Investigation Report prepared by the U.S. Probation Department. "Tr." refers to the transcript of the defendant's trial. "GX" refers to the Government's exhibits at trial. "Br." refers to the defendant's October 13, 2009 sentencing submission.

package and passed it to a coconspirator, ICE agents placed him under arrest. (Tr. 165). When speaking with ICE agents following his arrest, Andino at first denied knowing that the package that had been mailed to him, under his own name and at his own address, contained narcotics. Andino then admitted knowing that the package contained narcotics, but falsely stated that it was his understanding that the package contained marijuana, rather than cocaine. (Tr. 324).

On July 23, 2008, a grand jury in the Southern District of New York returned Indictment 08 Cr. 681 (NRB), charging Andino and Keithroy Davis with conspiring to violate the narcotics laws of the United States. (PSR ¶ 1). Trial on the charges in the Indictment began on July 13, 2009. (Tr. 1). At the trial, the Government called five witnesses – three ICE agents, a forensic chemist, and an Investigative Technician at the federal jail where Andino was housed after his arrest. (Tr. 1 - 325). The Government also introduced the seized cocaine, a video recording showing Andino's receipt of the package during the controlled delivery, phone records establishing a pattern of communications between Andino and Davis, and a call recorded while the defendant was detained after his arrest. (GX 9, 9A, 10, 11, 100, 101, 200, 500, 600, 700, 800, 2000).

On July 15, 2009, after approximately two hours of deliberation, the jury found Andino guilty of the sole count in the Indictment. (PSR ¶ 4; Tr. 502). On the special verdict form, the jury responded "no" to the question "do you find that the government has proven beyond a reasonable doubt that the defendant is accountable for 500 grams or more of cocaine?" (Tr. 503).

## Guidelines Calculation

The Government respectfully disagrees with both components of the sentencing Guidelines calculation contained in the PSR. As an initial matter, it is the Government's position that the quantity of cocaine involved in the conspiracy was 800 grams. (PSR ¶ 10). Indeed, the evidence at trial was undisputed that the package that was mailed to Andino, in his own name and to his address, and which was ultimately received by Andino directly, contained approximately 800 grams of cocaine. Because the jury did not find that Andino was accountable for 500 grams or more of cocaine, there is no statutory mandatory minimum sentence. The lack of such a finding, however, does not dictate the proper computation of the Guidelines range, as discussed below. Accordingly, pursuant to U.S.S.G. § 2D1.1(c)(7), the base offense level is 26. There are no additional enhancements applicable under § 2D1.1. The total offense level is therefore 26.

In addition, although the Probation Department has calculated Andino's criminal history category as I, the Government submits that Andino is in criminal history category II, as a result of his 1992 conviction for criminal sale of a controlled substance in the third degree. In connection with that conviction, Andino received a sentence of 5 to 10 years' imprisonment. As the PSR indicates, Andino was incarcerated on May 28, 1993 and paroled on February 25, 1997. (PSR ¶ 35). U.S.S.G. § 4A1.2(e)(1) provides that "any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of [the] fifteen-year period [preceding the defendant's commencement of the instant offense]," is to be counted for purposes of determining the defendant's criminal history category. Because

Honorable Naomi Reice Buchwald
October 19, 2009
Page 3 of 6

Andino received a sentence exceeding one year and one month, and because he was incarcerated as late as February 1997, approximately eleven years prior to his commencement of the instant offense, this conviction results in three criminal history points under the Guidelines, thus placing Andino in criminal history category II.

Based on a total offense level of 26 and a criminal history category of II, the applicable Guidelines range is 70 to 87 months' imprisonment.

## Applicable Law

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 128 S. Ct. 586, 596 (2007).

After that calculation, however, a sentencing judge must consider the seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). *Gall* v. *United States*, 128 S. Ct. at 597.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)    to afford adequate deterrence to criminal conduct;
>
> (C)    to protect the public from further crimes of the defendant; and
>
> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Honorable Naomi Reice Buchwald
October 19, 2009
Page 4 of 6

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* v. *United States*, 128 S. Ct. at 597 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 128 S. Ct. at 594. *See also Rita* v. *United States*, 127 S. Ct. at 2464. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall* v. *United States*, 126 S. Ct. at 597.

**Discussion**

**A.     The Court Should Find That Andino Is Responsible for 800 grams of Cocaine**

Andino argues, in agreement with the PSR, that the quantity of cocaine applicable to him should not be 800 grams because the jury failed to make a quantity finding on the special verdict sheet. This argument is in conflict with the law of the Supreme Court, the Second Circuit, and every other circuit that has addressed this issue. The courts have made clear that where a defendant has been found guilty of conspiring to distribute a controlled substance, the district court should utilize the quantity that was reasonably foreseeable to the defendant by a preponderance of the evidence, regardless of whether the jury was able to find an amount beyond a reasonable doubt. *See, e.g., United States* v. *Florez*, 447 F.3d 145 (2d Cir. 2006).

In *Florez,* the Second Circuit held that even after the Supreme Court's decision in *Booker*, the district court could make the finding by a preponderance that the drug weight charged in the Indictment is the applicable weight at sentencing, even if the jury failed to make such a finding at trial. The court wrote: "Florez argues that . . .the district court could not calculate his Guidelines sentence based on its own preponderance finding that he had dealt in ten to thirty kilograms of heroin when, as in this case, the jury had [not made such a finding at trial] . . . . This argument is foreclosed by our decision in *United States* v. *Garcia*, which holds that judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker*." *Id.* at 156. The court therefore affirmed the district court's sentencing of the defendant based on the amount alleged in the indictment. *Id.*; *see also United States* v. *Barnes*, No. S6 03 Cr. 1238 (KMW), 2008 WL 2156739 (S.D.N.Y. May 21, 2008) ("Even if Defendant had a jury trial, the Court would still sentence him pursuant to the drug amount the Court found attributable by a preponderance of the evidence.").

Honorable Naomi Reice Buchwald
October 19, 2009
Page 5 of 6

The evidence at trial was undisputed that the package mailed to Andino, which he agreed to receive, and which he ultimately did receive directly, contained approximately 800 grams of cocaine. There was, simply put, no other drug amount at issue in the case. Despite Andino's post-arrest statements, and the arguments of defense counsel to the contrary, the jury did not credit the suggestion that Andino believed the package contained marijuana as opposed to cocaine. Given (i) the jury's finding that Andino was guilty of conspiring to distribute and possess with the intent to distribute cocaine, (ii) the fact that the package mailed to Andino contained approximately 800 grams of cocaine, (iii) the fact that that package was ultimately received and handled by Andino personally and directly, (iv) Andino's false exculpatory statements following his arrest, and (v) the pattern of communication between Andino and other co-conspirators which was introduced at trial, the Government submits that the Court should find by a preponderance of the evidence that Andino is accountable for conspiring to distribute and possess with the intent to distribute 800 grams of cocaine.

### B.     The Section 3553(a) Factors Warrant a Guidelines Sentence

Andino argues that consideration of the Section 3553(a) factors weigh in favor of a sentence below the applicable Guidelines range. (Br. at 7-9). The Government respectfully disagrees, and urges the Court to impose a sentence within the applicable Guidelines range of 70 to 87 months. In this case, consideration of all of the factors described in 18 U.S.C. § 3553(a) indicates that a sentence within the Guidelines range is sufficient but not greater than necessary. In particular, the need for general and specific deterrence, the need for the sentence to reflect the seriousness of the offense, and the need to promote respect for the law are implicated in this case.

As described above, the defendant was engaged in a conspiracy to distribute a large amount of cocaine in New York City. This is a serious offense. The willingness of individuals like the defendant to receive packages containing illicit narcotics is responsible for the introduction of significant quantities of illegal drugs into our community. The Government submits that a Guidelines sentence is necessary in order to deter this defendant and other individuals from receiving and distributing narcotics in this fashion. Moreover, the Court should impose a sentence that avoids unwarranted sentencing disparities between the defendant and similarly situated defendants. 18 U.S.C. § 3553(a)(6). Here, the defendant's co-conspirator, Keithroy Davis, received a sentence of 60 months' imprisonment after pleading guilty to the same Indictment. The Court should impose a sentence within the Guidelines range in order to appropriately punish Andino relative to other similarly situated defendants who have accepted responsibility for their crimes. Such a sentence will also promote respect for the law and satisfy the sentencing objective of general deterrence.

Honorable Naomi Reice Buchwald
October 19, 2009
Page 6 of 6

## Conclusion

  For the foregoing reasons, the Government respectfully submits that a sentence within the Guidelines range of 70-87 months' imprisonment, would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.

              Respectfully submitted,

              PREET BHARARA
              Acting United States Attorney
              Southern District of New York

         By:     /s/      .
              Randall W. Jackson/ Jenna Dabbs
              Assistant United States Attorneys
              212-637-1029

cc:  Jennifer Brown
    Attorney for the defendant